UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| K.O. and E.O., Jr., by and through their parents and next friends E.O. and L.J., and C.J. by and through his father F.C., on behalf of Themselves and all similarly situated individuals,<br><br>　　　　　　　　　　　　Plaintiffs,<br><br>　　　v.<br><br><br>JEFFERSON BEAUREGARD SESSIONS III, former Attorney General of the United States, KIRSTJEN NIELSEN, Secretary of the United States Department of Homeland Security, JOHN F. KELLY, White House Chief of Staff, STEPHEN MILLER, Senior Advisor to the President, GENE HAMILTON, Counselor to the Attorney General Sessions, THOMAS HOMAN, former Director of the Department of United States Department of Customs and Immigration Enforcement, RONALD D. VITIELLO, Acting Director of United States Immigration and Customs Enforcement, L. FRANCIS CISSNA, Director of United States Citizenship and Immigration Services, KEVIN K. MCALEENAN, Commissioner of United States Customs and Border Protection, ALEX AZAR, Secretary of the United States Department of Health and Human Services; SCOTT LLOYD, Director of the United States Office of Refugee Resettlement; JOHN DOE UNITED STATES CUSTOMS AND BORDER PROTECTION AGENTS, JOHN DOE and JOHN DOE OFFICE OF REFUGEE RESETTLEMENT PERSONNEL,<br>　　　　　　　　　　　　Defendants, | CIV.ACT.NO.<br>18-40149-TSH |

**MEMORANDUM OF DECISION AND ORDER**
**February 3, 2020**

**Background**

The Plaintiffs are all minor, non-United States citizen children who were forcibly separated from their parents in immigration detention facilities without benefit of prior legal

proceedings. This separation was initiated when the parents were referred for criminal prosecution for the misdemeanor offense of illegal reentry under 8 U.S.C.§ 1325(a). These referrals required the parents to be separated from their children and transferred into detention resulting in the children being classified as "unaccompanied." The separation continued even after the parents were returned to immigration detention or released from custody. Plaintiffs are suing current and former government employees seeking damages in the form of a fund for mental health treatment of the minor class members. More specifically, Plaintiffs assert claims against the Defendants in their individual capacities pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999 (1971) for: violation of their Fourth Amendment right to be free from unlawful and unreasonable seizure (Count I); violation of their Fifth Amendment substantive due process right to family integrity (Count II); violation of their Fifth Amendment procedural due process rights (Count III); violation of their right to equal protection guaranteed by the Fifth Amendment (Docket No. IV); violation of the Fifth Amendment substantive due process by inflicting a punitive conditions on them during their civil immigration detention (Count V); violation of their Fifth Amendment due process rights by coercing conditioning of the reunification of children with their parents upon wavier of the right to asylum and pursuit of other immigration relief (Count VI); and violation of their Fifth Amendment substantive due process rights by failing to provide adequate mental health services (Count VII). Plaintiffs have also asserted statutory claims for conspiracy to interfere with Civil Rights, in violation of 42 U.S.C. §1985(3)(Count VIII); and refusal or neglect to prevent or aid in a conspiracy to interfere with Civil Rights, in violation of 42 U.S.C. § 1986 (Count IX).

This Memorandum of Decision and Order addresses: (1) Defendants' Motion to Dismiss (Docket No. 51); (2) Plaintiffs' Motion for Jurisdictional Discovery (Docket No. 57); (3) Plaintiffs' Motion For Leave To File Second Amended Class Action Complaint (Docket No. 64); (4) Plaintiff's Motion To Strike Defendants' 46 Page Reply Brief (Docket No. 65); and (5) Defendants' Motion For Leave to Allow Their 46-Page Reply Brief To Remain Filed (Docket No. 69).   Defendants' motion to file a reply brief of 46 pages is *granted.* Accordingly, Plaintiffs' motion to strike is denied.[1] For the reasons set forth below, Defendants' motion to dismiss is *granted*, the Plaintiffs' motion for jurisdictional discovery is *denied* and the Court will not rule on the pending motion to amend the complaint.

## **THE MOTION TO DISMISS**

The Government has moved to dismiss the First Amended Complaint on the grounds that the Court lacks personal jurisdiction over the them, for improper venue pursuant to 28 U.S.C. § 1406, the Court should refuse to extend *Bivens* to the claims asserted by Plaintiffs (and therefore, such claims should be dismissed) and/or the Defendants are entitled to qualified or absolute immunity for all claims asserted against them.

### Lack of Personal Jurisdiction

Plaintiffs have the burden of establishing a prima facie case of personal jurisdiction over the Defendants. To meet this burden, the Plaintiffs "must proffer[] evidence, which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction" and the Court "'must accept the plaintiff's properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the primal facie jurisdictional showing.'" *Phillips v. Prairie Eye*

---

[1] While I am granting the Government's motion to file a brief in excess of 20 pages, I want to note that its argument that the 20 page limit on memorandum filed with the Court set forth in LR.D.Mass. 7.1(b)(4) does not apply to reply briefs is both nonsensical and disingenuous.

3

*Center*, 530 F.3d 22, 26 (1st Cir. 2008)(citation to quoted case omitted).  In the First Amended Complaint, Plaintiffs do not allege that the individual Defendants reside, work in, or took any actions against them in Massachusetts. Instead, they assert that all of the Defendants are subject to nationwide service of process pursuant to 28 U.S.C. §1391(e) and Fed.R.Civ.P. 4(k)(1)(C). The Defendants assert that they are not subject to nationwide service of process and the First Amended Complaint must be dismissed because the Court otherwise lacks personal jurisdiction over them.

Where authorized by statute, nationwide service of process allows personal jurisdiction to be predicated upon a defendant's physical presence anywhere in the United States.  The Supreme Court has long held that where plaintiffs file a *Bivens'* action against a federal officers/agents for monetary damages, such as in this case, Section 1391(e) does not confer nationwide service of process. *Stafford v. Briggs*, 444 U.S. 527, 100 S.Ct. 774 (1980).  Moreover, neither 42 U.S.C. § 1985 or §1986 authorize nationwide service of process. *See Riley v. Cardozo*,  3:16-cv-961-J-34MCR, 2017 WL 2799900 4 (M.D. Fla. Jun. 28, 2017) and cases cited therein. Accordingly, this Court must look to Fed.R.Civ. P. 4(k)(1)(A) which generally requires that federal district courts exercise personal jurisdiction in accordance with the laws of the state in which they sit:

> In federal question cases, the Due Process Clause of the Fifth Amendment … requires only that defendants have minimum contacts with the United States as a whole rather than with a particular state.  Nevertheless, for the court to exercise personal jurisdiction, service of process must still be grounded in a federal statute or rule.
> [Pursuant to Fed.R.Civ.P. 4(k)(1)(C), a]n out-of-state defendant in a federal question case may properly be served if the federal statute conferring jurisdiction provides for nationwide service of process. However, if a federal statute is silent on nationwide service of process … Fed. R. Civ. P. 4(k)(1)(A) requires that service of process be determined by the state long-arm statute.

*Wang v. Schroeter*, No. CIV.A. 11-10009-RWZ, 2011 WL 6148579, at *4 (D. Mass. Dec. 9, 2011), *aff'd* (Dec. 11, 2012)(internal citations omitted).

Pursuant to Fed.R.Civ.P. 4(k)(1)(A), the Massachusetts long arm statute, Mass.Gen.L. ch. 223A, §3 is applied in federal court to obtain personal jurisdictions:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting any business in the commonwealth . . .; (c) causing tortious injury by an act or omission in this commonwealth; (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this commonwealth.

Mass.Gen.L. ch. 223A, § 3(a), (c) & (d). The Massachusetts long arm statute extends to the fullest extent permitted by the Due Process Clause of the Constitution. Accordingly, the Court will examine whether exercise of jurisdiction over the Defendants would comport with Due Process. *See Phillips*, 530 F.3d at 26.[2]

---

[2] The parties, in particular the Defendants, focus primarily on whether the Court has personal jurisdiction over the Defendants under the Massachusetts long arm statute. The Court has chosen to focus on whether the exercise of jurisdiction over the Defendants comports with due process. Nevertheless, I want to make clear that Plaintiffs have not proffered sufficient facts to establish a prima facie case for the exercise of jurisdiction over the Defendants under the Massachusetts long arm statute. More specifically, Plaintiffs have not proffered any facts which would support a finding that any Defendant transacts any business within Massachusetts, or "regularly does or solicits business, or engage in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this commonwealth. *See* Mass.Gen.L. ch. 223A, §3. Moreover, the Plaintiffs have not identified any tortious injury which they suffered *in Massachusetts* which was caused by an act or omission of any Defendant outside the Commonwealth. Additionally, the Plaintiffs have not identified any harm that Defendants *caused* them in Massachusetts which they would not have suffered but for Defendants' contacts with Massachusetts. In making this determination, I have considered that he Plaintiffs understandably suffered emotional trauma and while that emotional trauma, by all accounts, is severe and ongoing, the actual tortious injury occurred outside the commonwealth. Indeed, the Plaintiffs would continue to suffer the emotional trauma regardless of where they were to reside after being released from detention and reunited with their parents. Put another way, Plaintiffs have failed to point to any facts which would support a finding that their claims arise from Defendants' contacts with Massachusetts and that such contacts were the "but for" cause of their harm, *i.e.*, that the claims related to Defendants' activities within the commonwealth. Because Plaintiffs' claims do not arise out of Defendants' contacts with Massachusetts, I find that they have failed to make a showing that the Massachusetts long arm statute authorizes personal jurisdiction over the Defendants. Moreover, Plaintiffs suggestion in their opposition that personal jurisdiction is proper based on a "conspiracy jurisdiction" theory warrants little discussion. Assuming that the argument was not waived (because it was raised for the first time in their opposition), the assertion is completely devoid of merit. For the remainder of the personal jurisdiction discussion, I will assume that the Plaintiffs have established a prima facie case for this Court to exercise personal jurisdiction under the statute and will examine whether the Defendants have constitutionally sufficient contacts with Massachusetts to support a finding of jurisdiction.

This Court may exercise personal jurisdiction over nonresident defendants only when doing so will "not offend 'traditional notions of fair play and substantial justice.' "*Int'l Shoe Co. v. Washington*, 326 US. 310, 316, 66 S/Ct/ 154 (1945)(citation to quoted case omitted).

> Personal jurisdiction over a defendant can come in the form of general or specific jurisdiction. For general jurisdiction the defendant must have continuous and systematic contacts with the forum state, but the particular cause of action may be unrelated to those contacts. General jurisdiction 'broadly subjects the defendant to suit in the forum state's courts in respect to all matters,' regardless of whether the matter before the court has anything to do with the defendant's contacts with the state. In this way general jurisdiction is different than specific jurisdiction because specific jurisdiction depends on an 'affiliatio[n] between the forum and the underlying controversy.'… . [3]
>
> Courts may assert specific jurisdiction over a defendant when it is permissible under both the forum state's long-arm statute and the Due Process Clause of the United States Constitution.

*Bluetarp Fin., Inc. v. Matrix Const. Co.*, 709 F.3d 72, 79–80 (1st Cir. 2013).

In determining whether specific jurisdiction exists, the Court applies the following three factors:

> (1) whether the claim arises out of or is related to the defendant's in-state activities ("relatedness"); (2) whether the defendant has purposefully availed himself of the benefits and protections of the forum state's laws ("purposeful availment"); and (3) whether the exercise of jurisdiction is reasonable under the circumstances (the "*gestalt* factors").

*Murphy v. Cent. Falls Det. Facility Corp.*, No. C.A. 14-203 S, 2015 WL 1969178, at *6 (D.R.I. Apr. 30, 2015)(citing *Bluetarp Fin., Inc.*, 709 F.3d at 80-83);*see also*, *United States v. Swiss*

---

[3] "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Daimler AG v. Bauman,* 571 U.S. 117, 137, 134 S. Ct. 746, 760 (2014). Plaintiffs have not averred that any of the individual Defendants are domiciled in Massachusetts. Therefore, general jurisdiction for purposes of this case would require that the Defendants engage in continuous and systematic general business contacts that approximate physical presence in Massachusetts. Nothing in Plaintiffs' submissions suggests the existence of the continuous and systematic types of contact that could serve as a basis for this Court to exercise general jurisdiction over any of the Defendants. Accordingly, the Court will focus on whether the Plaintiffs have established a prima facie basis for the exercise of specific jurisdiction over the Defendants.

*American Bank*, LTD. 191 F.3d 30, 36 (1st Cir. 1999)(constitutional inquiry proceeds in three steps: relatedness, purposeful availment, and reasonableness).  If the Plaintiffs meet their burden of establishing the first two prongs, the burden shifts to the Defendants to set forth a "compelling" case that the Court's exercise of jurisdiction over them would be unreasonable. An affirmative finding on each of these elements is needed to support a specific jurisdiction finding. *Negrón–Torres v. Verizon Communications, Inc.*, 478 F.3d 19, 24–25 (1st Cir.2007). The Plaintiffs, who ultimately have the burden of persuading this Court that the exercise of jurisdiction is proper, *see Astro-Med, Inc. v. Nihon Kohden America, Inc*., 591 F.3d 1, 8 (1st Cir. 2009), assert that the Defendants do not need to be or have been "physically present in Massachusetts" to establish personal jurisdiction over them-- rather communications to Massachusetts such as phone calls and/or an  "e-mail once or twice" to K.O's father informing him that this family had been detained and his child separated from his mother is enough to satisfy due process. For the reasons set forth below, I disagree.

The Plaintiffs and their parent(s) entered the United States through Texas, where they were arrested and detained. The Plaintiffs were separated from their parents and remained in Texas or were sent to Michigan and, ultimately, all came to reside in Massachusetts.  More Specifically:

> 1. Plaintiffs K.O. (nine years old) and E.O., Jr. (seventeen years old) arrived with their mother, L.J., in Texas on May 19, 2018 seeking asylum after fleeing Guatemala. They were originally detained in Texas and held separately. Conditions were overcrowded and cold. Contact was made with E.O., the father of K.O and E.O. Jr., in Massachusetts by an unidentified agent; E.O. was told that the children would be separated from their mother, L.J. The Plaintiffs were held in Texas for a number of days, separate from each other and their parents. During this period, the Plaintiffs were verbally harassed and physically assaulted.  E.O. Jr. and K.O. were taken to Michigan and placed with different foster families. While in Michigan, E.O. Jr. was able to call his father, E.O., who was in Massachusetts. On June 19, 2018, K.O. and E.O. Jr. were reunited with their father in Massachusetts when personnel from the Office of Refugee Settlement or

their agents brought the children from Michigan to Massachusetts.  L.J., who had remained in Texas separate from her children, was reunited with the family in Massachusetts on June 26, 2018  K.O. and E.O. Jr. continue to suffer emotional trauma as a result of the forcible separation.

      2.      Plaintiff, C.J. (eleven years old), arrived with his father, F.C., in Texas on June 17, 2018, seeking asylum after fleeing Guatemala.  They were brought to a detention center and told that they would be separated. The conditions were cold and they were made to sleep on the floor with one aluminum blanket to share.  They were hungry as the only food they were give was a burrito to share twice each day.  After two days, C.J. and his father were separated- F.C. was taken to a different detention facility where he was to be processed in a criminal court. Thereafter, F.C. transferred to multiple different detention facilities.  At one of the facilities, an employee allowed F.C. to contact C.J. and speak with him for about five minutes.  C.J. was held at a facility with other children who had been separated from their parents; while there, C.J. was hit in the eye by another child. On July 26, 2018, C.J. and F.C. were reunited at a detention facility in Texas. C. J. continues to suffer emotional trauma from the forced separation.[4]

Initially, I will address the "purposeful availment" prong which focuses on whether the Defendants had voluntary contacts with Massachusetts—the contacts must be deliberate and "proximately result from the actions of the defendant *himself*" and "must be of a nature that the defendant could reasonably anticipate being hailed into court" in Massachusetts. *Phillips*, 530 F.3d at 27.  The Plaintiffs have failed to point to any deliberate actions directed by any Defendant toward Massachusetts other than a few phone calls to E.O. and other correspondence from unidentified personnel with E.O. regarding the status of his children, and the travel of unidentified federal personnel from Michigan to Massachusetts to deliver E.O. Jr. and K. O. to E.O.  Plaintiffs also point out that Defendants Nielson and McAleenan knew that E.O. was in Massachusetts, a fact they would have become aware of after E.O. Jr. and K.O. were detained and separated

---

[4] At the time that the First Amended Complaint was filed, C.J. and F.C. lived in Massachusetts. It is not clear when they moved to Massachusetts and other than the allegations of the continued emotional trauma from which C.J. continues to suffer, there are no allegations of fact underlying C.J's claims which took place in Massachusetts.

from L.J. However, the sporadic and minimal contacts cited by the Plaintiffs cannot be said to be deliberate or purposeful and for the most part were not engaged in by the Defendants themselves.[5] Therefore, I find that the Plaintiffs have not alleged any facts or proffered any evidence which make out a prima facie case to support a finding that any Defendant purposefully availed him or herself of the benefits or protections of the laws of Massachusetts.

As to relatedness, setting aside the continuing emotional trauma suffered by the Plaintiffs,[6] they have not identified any harm that Defendants caused them in Massachusetts. *See also* discussion note 2 *supra.* Accordingly, it is apparent that Plaintiffs' claims do not arise out of Defendants' contacts with Massachusetts. Put another way, Plaintiffs have failed to allege any facts or proffer evidence which would establish a demonstrable nexus between their claims and any Massachusetts based activities by any of these Defendants. *Accord Phillips*, 530 F.3d at 27 (There must be more than just attenuated connection between contacts and claim; defendant's in-state conduct must form important, or at least material, element of proof' in the plaintiff's case). Therefore, I find that the Plaintiffs have failed to make out a prima facie case to

---

[5] Plaintiffs seek to attribute the actions and contacts of unknown agents to their superiors. For example, they assert that John Doe agents telephoned and corresponded with E.O. in Massachusetts and conclude that contact by these unknown agents "implicates" the named Defendants who worked with or supervised the John Doe agents. Such indirect contacts do not constitute "purposeful availment." *See Wormley v. United States*, 601 F. Supp.2d 27, 34 (D.D.C. 2009)(federal official's contacts with the forum made in a "supervisory role" do not amount to purposeful availment); *Claasen v. Brown*, Civ.A. 94-1018 GK, 1996 WL 79490, 2 (D.D.C. Feb. 16,1996)(same); *Hill v. Pugh*, 75 Fed.Appx.715, 719 (10th Cir. 2003) ("it is not reasonable . . . that federal prison officials may be hauled into court simply because they have regional and national supervisory responsibilities over facilities within the forum state"). Even if the Court were to accept the "contacts by implication" theory espoused by the Plaintiffs, I would not apply it in this case since Plaintiffs have not proffered any evidence which would link any given John Doe to a specific agency sufficient to "implicate" any specific Defendant. Instead, Plaintiffs assertions are based on shear speculation and inuendo.

[6] By this I do not mean to minimize the emotional trauma which the Plaintiffs continue to suffer-- that trauma is significant. However, that trauma is the result of alleged conduct by the Defendants which took place outside of Massachusetts and will continue to be suffered no matter where the Plaintiffs reside. That is, it is not an injury which they would have suffered but for Defendants' contacts with Massachusetts.

support a finding in their favor on the relatedness prong. That leaves "reasonableness" which requires the Court to analyze the so-called "Gestalt factors."

The "Gestalt factors" require the Court to consider:

(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*Adelson v. Hananel*, 510 F.3d 43, 51 (1st Cir. 2007). Application of these factors, which are "intended to aid the court in achieving substantial justice, play a larger role in cases where the minimum contact question is very close.". *Id* Thus, "the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 210 (1st Cir. 1994). I have found that Plaintiffs' showing on the first two prongs is not merely weak, it is non-existent. Accordingly, it is not necessary for me to address the third prong (reasonableness). Nevertheless, for the sake of completeness, I will do so. The Defendants' showing under the third prong (that exercise of personal jurisdiction over them would be unreasonable) need not be strong. The Plaintiffs argue that "all five Gestalt factors favor this Court's exercise of personal jurisdiction." The Defendants, on the other hand, argue that the Gestalt factors favor a finding of unreasonableness.[7]

I agree with the Plaintiffs that the second (the forum's state's interest in adjudicating the dispute) and third factors (plaintiff's burden in obtaining convenient and effective relief) favors

---

[7] The Government suggests the Court ignore arguments made by the Plaintiffs for the first time in their opposition, but presumably wants the Court to consider its argument regarding the Gestalt factors made for the first time in its reply brief. Plaintiffs' discussion of the Gestalt factors was not sprung on the Defendants and it was surprising to see that the Government failed to address these jurisdictional stalwarts in its memorandum in support of its motion to dismiss. Nevertheless, primarily because it is not necessary to the outcome of this issue of specific jurisdiction, I will consider the Government's arguments.

them. However, the remaining factors either lean toward the Defendants or are essentially neutral. More specifically, since none of the Defendants are domiciled here, there would be some inconvenience for them to travel to Massachusetts. Additionally, the Government argues generally that legal policy and practical concerns counsel against making them appear in Massachusetts.  However, the Defendants have not pointed to any special or unusual burden they would face in defending the case in this Court and given means "modern travel," the Court cannot infer any "special or unusual burden" imposed on the Defendants if they were required to appear in Massachusetts. *See Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 40 (1st Cir. 2016). Therefore, the first factor, at best, slightly favors the Defendants or is neutral.  The second factor (Massachusetts interest in adjudicating the dispute) tips *slightly* in favor the Plaintiffs: While Massachusetts has a strong interest in giving its citizens a forum "'for redressing injuries inflicted by out-of-state actors,'" *Id.* (citation to quoted case omitted), the harm inflicted on the Plaintiffs in this case primarily took place in other jurisdictions. *See Ticketmaster*, 26 F.3d at 211 (forum's interests are lessened where defendant's act not committed in forum). Nonetheless, Plaintiffs continue to suffer emotional trauma while residing in Massachusetts and for that reason, contrary to the Defendants' argument, it cannot be said that Massachusetts has *no* interest in adjudicating this dispute. *Baskin-Robbins*, 825 F.3d at 40 (forum state's interest need not be exclusive, nor even greater than interest of other state).  The fourth (judicial system's interest in obtaining most effective resolution of the controversy) and fifth (common interests of all sovereigns in promoting substantive social policies) factors are both neutral. As to the fourth factor, '[e]ven though Massachusetts courts can effectively administer justice in this dispute, they have no corner on the market." *Id.*, at 41. As to the fifth factor, while Massachusetts has an interest in providing its citizens with a convenient forum, it's interest in

11

adjudicating this dispute which involves grave and substantial federal social policy issues is no greater than any other states'.

At the end of the day, application of the Gestalt factors strongly favors neither side—at most, they *marginally* favor the Plaintiffs. While their application shows that the exercise of jurisdiction over the Defendants would not be unfair or unreasonable, given Plaintiffs failure to proffer enough evidence to satisfy the relatedness and purposeful availment prongs, specific jurisdiction cannot attach. For these reasons, I find that this Court's exercise of personal jurisdiction would not comport with due process and therefore, the motion to dismiss is granted.[8]

## Whether Venue is Improper

The Court has found that it lacks jurisdiction over the Defendants. I will, nevertheless, address whether venue is appropriate in this district to settle the issue should Plaintiffs appeal my finding of lack of personal jurisdiction (and prevail).

The Plaintiff asserts that venue is proper in this district pursuant to 28 U.S.C. §1391(e) which allows the litigation to occur in "any judicial district in which . . . the plaintiffs reside if no real property is involved in the action." § 1391(e)(1)(C). However, as mentioned in connection with the Court's discussion of the personal jurisdiction issue, section 1391(e) does not apply to actions for money damages brought against federal officials in their individual capacities, rather it was intended to "permit an action which is essentially against the United States to be brought locally rather than in the District of Columbia as would normally be required if Washington,

---

[8] Plaintiffs have filed a motion seeking to conduct jurisdictional discovery. A plaintiff "who makes out a colorable case for the existence of in personam jurisdiction may well be entitled to a modicum of jurisdictional discovery if the [defendant] interposes a jurisdictional defense." However, 'that entitlement is not absolute.' *United States v. Swiss Am. Bank, Ltd.,* 274 F.3d 610, 625 (1st Cir. 2001). In this case, I do not find that Plaintiffs have made "colorable" claim of jurisdiction and therefore, there request for discovery is *denied*.

D.C., is the official residence of the agency sued." *Gilbert v. DaGrossa,* 756 F.2d 1455, 1460 (9th Cir. 1985)(citing to *Stafford,* 44 U.S. at 539-40, 100 S.C.t 77).

Plaintiffs also contend that venue is proper because a "substantial part of the events or omissions giving rise to the claim occurred" in Massachusetts. *See* 28 U.S.C. § 1391(b)(2). When considering whether a "substantial part of the events occurred" in Massachusetts, the First Circuit "look[s] not to a single triggering event prompting the action, but to the entire sequence of events underlying the claim" and it does not "focus on the actions of one party." *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 12 (1st Cir. 2009)(quotation marks, internal citations and citations to quoted case omitted).

Plaintiffs contend that Massachusetts is where a substantial part of the events underlying their claims occurred. However, the record does not support such a finding. The only actions which Defendants allegedly took regarding Massachusetts are that unidentified federal personnel made phone calls and may otherwise have communicated and/or permitted E.O. Jr. and K.O. to communicate on a few occasions with E.O. who was in Massachusetts, and brought E.O. Jr. and K.O. to Massachusetts to reunited them with E.O. when they were released from detention. However, the Plaintiffs' claims arise from events which occurred when they entered the United States in Texas, and their time at the detention facilities in Texas and in Michigan. It is their continuing emotional trauma from these out-of-jurisdiction events which serve as the only link (claim wise) to Massachusetts—this minimal link is not enough. Since nearly the entirety of the substantive allegations in the First Amended Complaint relate to matters that occurred outside of Massachusetts, venue is improper in this district.

**TRANSFER OF THE CASE**

The Plaintiffs requested that if this Court were to determine that venue is improper that rather than dismiss the case, they be permitted to seek a transfer to an appropriate venue pursuant to 28 U.S.C. 1406(a). Because this Court lacks personal jurisdiction over the Defendants, transfer of the case would be pursuant to 28 U.S.C. § 1631 which "allows [the court] to transfer a case over which [it] lack[s] jurisdiction to any other court where the action originally could have been brought, so long as such a transfer is in the 'interest of justice.' *Narragansett Elec. Co. v. U.S. E.P.A.*, 407 F.3d 1, 8 (1st Cir. 2005). Thus, it is within the discretion of this Court to transfer this case to the district where venue would be proper, and the defendants would be subject to personal jurisdiction. The Defendants have encouraged this Court to transfer the case to the District of Columbia. The Plaintiffs have not specified where they believe venue would be proper should the Court find that venue is improper. In the interests of justice, this Court will transfer this case to the United States District Court for the District of Columbia.

**Conclusion**[9]

1. Defendants' Motion to Dismiss (Docket No. 51) is ***granted*** as the Court lacks personal jurisdiction over the Defendants and venue is improper in this District. This case shall be transferred to the United States District Court for the District of Columbia;

2. Plaintiffs' Motion for Jurisdictional Discovery (Docket No. 57) is ***denied***;

3. Plaintiff's Motion To Strike Defendants' 46 Page Reply Brief (Docket No. 65) is ***denied***; and

---

[9] The Court declines to rule on Plaintiffs' Motion For Leave To File Second Amended Class Action Complaint (Docket No. 64); that motion shall be left to the discretion of the transferee court.

4. Defendants' Motion For Leave to Allow Their 46-Page Reply Brief To Remain Filed (Docket No. 69) is ***granted***.

**So Ordered:**

/**s**/ *Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**